**THE SOLICITATION OF VOTES (THE "SOLICITATION") IS BEING CONDUCTED TO OBTAIN ACCEPTANCES OF THE PREPACKAGED PLAN UPON THE FILING OF A VOLUNTARY REORGANIZATION CASE UNDER CHAPTER 11 OF THE BANKRUPTCY CODE. <u>THE COMPANY HAS NOT COMMENCED A BANKRUPTCY CASE UNDER CHAPTER 11 OF THE BANKRUPTCY CODE AT THIS TIME.</u> BECAUSE A CHAPTER 11 CASE HAS NOT YET BEEN COMMENCED, THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION WITHIN THE MEANING OF SECTION 1125(a) OF THE BANKRUPTCY CODE. FOLLOWING THE COMMENCEMENT OF ITS CHAPTER 11 CASE, THE COMPANY EXPECTS TO PROMPTLY SEEK ORDERS OF THE BANKRUPTCY COURT (i) APPROVING THIS DISCLOSURE STATEMENT AS CONTAINING ADEQUATE INFORMATION, (ii) APPROVING THE SOLICITATION OF VOTES AS BEING IN COMPLIANCE WITH SECTIONS 1125 AND 1126(b) OF THE BANKRUPTCY CODE AND (iii) CONFIRMING THE PREPACKAGED PLAN.**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| TETRAGENEX PHARMACEUTICALS, INC.[1] | Case No. _____ |
| Debtor | |

**DISCLOSURE STATEMENT
DATED AUGUST 10, 2010**

**FOR SOLICITATION OF VOTES ON THE PREPACKAGED PLAN OF REORGANIZATION OF TETRAGENEX PHARMACEUTICALS, INC.**

---

[1] The last four digits of the Debtor's federal tax identification number, are 1895  The Debtor's mailing address for purposes of this case is 6901 Jericho Tpk., Ste 221, Syosset, New York  11791.

# DISCLAIMER

FOR A COMPLETE UNDERSTANDING OF THE PREPACKAGED PLAN, YOU SHOULD READ THIS DISCLOSURE STATEMENT, THE PREPACKAGED PLAN AND THE EXHIBITS HERETO AND THERETO IN ITS ENTIRETY. IF ANY INCONSISTENCY EXISTS BETWEEN THE PREPACKAGED PLAN AND THIS DISCLOSURE STATEMENT, THE TERMS OF THE PREPACKAGED PLAN ARE CONTROLLING.

HOLDERS OF CLAIMS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE, AND SHOULD CONSULT WITH ITS OWN ADVISORS BEFORE CASTING A VOTE WITH RESPECT TO THE PREPACKAGED PLAN.

THE COMMON STOCK OF REORGANIZED TETRAGENEX (AS DEFINED HEREIN) HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 (THE "SECURITIES ACT"), OR SIMILAR STATE SECURITIES OR "BLUE SKY" LAWS. THE ISSUANCE OF SUCH SECURITIES UNDER THE PREPACKAGED PLAN WILL BE AFFECTED PURSUANT TO THE EXEMPTION UNDER SECTION 1145 OF THE BANKRUPTCY CODE.

NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE SECURITIES COMMISSION HAS APPROVED OR DISAPPROVED THE TRANSACTIONS CONTEMPLATED HEREIN OR DETERMINED IF THIS DISCLOSURE STATEMENT IS TRUTHFUL OR COMPLETE. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING SECURITIES OR CLAIMS OF TETRAGENEX CORPORATION SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PREPACKAGED PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED.

CERTAIN STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING PROJECTED FINANCIAL INFORMATION AND OTHER FORWARD-LOOKING STATEMENTS, ARE BASED ON ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL BE REFLECTIVE OF ACTUAL OUTCOMES. FORWARD-LOOKING STATEMENTS PROVIDED IN THIS DISCLOSURE STATEMENT SHOULD BE EVALUATED IN THE CONTEXT OF THE ESTIMATES, ASSUMPTIONS, UNCERTAINTIES AND RISKS DESCRIBED HEREIN.

FURTHER, READERS ARE CAUTIONED THAT ANY FORWARD-LOOKING STATEMENTS HEREIN ARE BASED ON ASSUMPTIONS THAT ARE BELIEVED TO BE REASONABLE BUT ARE SUBJECT TO A WIDE RANGE OF RISKS INCLUDING, BUT NOT LIMITED TO, THOSE RISKS DESCRIBED IN ARTICLE VIII OF THIS DISCLOSURE STATEMENT AND EACH OF THE OTHER RISKS IDENTIFIED IN THIS DISCLOSURE STATEMENT. DUE TO THESE UNCERTAINTIES, READERS CANNOT BE ASSURED THAT ANY FORWARD-LOOKING STATEMENTS WILL PROVE TO BE CORRECT. THE COMPANY IS UNDER NO OBLIGATION TO (AND EXPRESSLY

DISCLAIMS ANY OBLIGATION TO) UPDATE OR ALTER ANY FORWARD-LOOKING STATEMENTS WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS, OR OTHERWISE, UNLESS INSTRUCTED TO DO SO BY THE BANKRUPTCY COURT.

HOLDERS OF PRIORITY CLAIMS AND SECURED CLAIMS WILL NOT BE IMPAIRED BY THE PREPACKAGED PLAN AND AS A RESULT ITS RIGHTS WITH RESPECT TO EXISTING OBLIGATIONS ARE NOT ALTERED BY THE PREPACKAGED PLAN. DURING THE CHAPTER 11 CASE, THE DEBTOR INTENDS TO OPERATE ITS BUSINESS IN THE ORDINARY COURSE.

ALTHOUGH THE COMPANY HAS ATTEMPTED TO ENSURE THE ACCURACY OF THE FINANCIAL INFORMATION PROVIDED IN THIS DISCLOSURE STATEMENT, EXCEPT WHERE SPECIFICALLY NOTED, NO INDEPENDENT AUDITOR OR ACCOUNTANT HAS REVIEWED OR APPROVED THE FINANCIAL PROJECTIONS OR THE LIQUIDATION ANALYSIS HEREIN.

THE COMPANY'S MANAGEMENT PREPARED THE FINANCIAL PROJECTIONS PROVIDED IN THIS DISCLOSURE STATEMENT. THESE FINANCIAL PROJECTIONS, WHILE PRESENTED WITH NUMERICAL SPECIFICITY, ARE NECESSARILY BASED ON A VARIETY OF ESTIMATES AND ASSUMPTIONS THAT, ALTHOUGH CONSIDERED REASONABLE BY MANAGEMENT, MAY NOT BE REALIZED AND ARE INHERENTLY SUBJECT TO SIGNIFICANT BUSINESS, ECONOMIC, COMPETITIVE, INDUSTRY, REGULATORY, MARKET AND FINANCIAL UNCERTAINTIES AND CONTINGENCIES, MANY OF WHICH ARE BEYOND THE COMPANY'S CONTROL. THE COMPANY CAUTIONS THAT NO REPRESENTATION CAN BE MADE AS TO THE ACCURACY OF THESE FINANCIAL PROJECTIONS OR THE ABILITY TO ACHIEVE THE PROJECTED RESULTS. SOME ASSUMPTIONS INEVITABLY WILL NOT MATERIALIZE. FURTHER, EVENTS AND CIRCUMSTANCES OCCURRING SUBSEQUENT TO THE DATE ON WHICH THESE FINANCIAL PROJECTIONS WERE PREPARED MAY BE DIFFERENT FROM THOSE ASSUMED AND/OR MAY HAVE BEEN UNANTICIPATED, AND THUS THE OCCURRENCE OF THESE EVENTS MAY AFFECT FINANCIAL RESULTS IN A MATERIALLY ADVERSE OR MATERIALLY BENEFICIAL MANNER. THE FINANCIAL PROJECTIONS, THEREFORE, MAY NOT BE RELIED UPON AS A GUARANTEE OR OTHER ASSURANCE OF THE ACTUAL RESULTS THAT WILL OCCUR.

THE STATEMENTS AND FINANCIAL INFORMATION CONTAINED HEREIN HAVE BEEN MADE AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED. HOLDERS OF CLAIMS AND EQUITY INTERESTS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER AT THE TIME OF SUCH REVIEW THAT THERE HAVE BEEN NO CHANGES IN THE FACTS SET FORTH HEREIN SINCE THE DATE HEREOF. MOREOVER, THERE MAY BE ERRORS IN THE STATEMENTS AND/OR FINANCIAL INFORMATION CONTAINED HEREIN AND/OR ASSUMPTIONS UNDERLYING SUCH STATEMENTS AND/OR FINANCIAL INFORMATION. THE COMPANY AND ITS ADVISORS EXPRESSLY DISCLAIM ANY

OBLIGATION TO UPDATE OR CORRECT ANY SUCH FINANCIAL INFORMATION OR ASSUMPTIONS.

NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION WITH RESPECT TO THE PREPACKAGED PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT. NO REPRESENTATIONS CONCERNING THE COMPANY OR THE VALUE OF ITS PROPERTY HAVE BEEN AUTHORIZED BY THE COMPANY OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY INFORMATION, REPRESENTATIONS OR INDUCEMENTS MADE TO OBTAIN AN ACCEPTANCE OF THE PREPACKAGED PLAN OTHER THAN, OR INCONSISTENT WITH, THE INFORMATION CONTAINED HEREIN AND IN THE PREPACKAGED PLAN, SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM OR AN INTEREST.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED.

THE INFORMATION IN THIS DISCLOSURE STATEMENT IS BEING PROVIDED SOLELY FOR PURPOSES OF VOTING TO ACCEPT OR REJECT THE PREPACKAGED PLAN, OBJECTING TO CONFIRMATION OF THE PREPACKAGED PLAN AND IN CONJUNCTION WITH THE SUBSCRIPTION (AS DESCRIBED HEREIN). NOTHING IN THIS DISCLOSURE STATEMENT MAY BE USED BY ANY PARTY FOR ANY OTHER PURPOSE.

ALL EXHIBITS TO THIS DISCLOSURE STATEMENT ARE INCORPORATED INTO AND ARE A PART OF THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN.

THIS DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN PROVISIONS OF THE PREPACKAGED PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN DOCUMENTS RELATING TO THE PREPACKAGED PLAN AND CERTAIN FINANCIAL INFORMATION. ALTHOUGH THE COMPANY BELIEVES THAT ALL SUCH SUMMARIES ARE FAIR AND ACCURATE AS OF THE DATE HEREOF, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF UNDERLYING DOCUMENTS AND TO THE EXTENT THAT THEY MAY CHANGE AS PERMITTED BY THE PREPACKAGED PLAN AND APPLICABLE LAW. THE COMPANY'S MANAGEMENT HAS PROVIDED FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED. THE COMPANY DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT INCLUDING THE FINANCIAL INFORMATION, IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION.

INTERNAL REVENUE SERVICE CIRCULAR 230 NOTICE: TO ENSURE COMPLIANCE WITH INTERNAL REVENUE SERVICE CIRCULAR 230, HOLDERS OF CLAIMS AND PRECONFIRMATION EQUITY INTERESTS ARE HEREBY NOTIFIED

THAT: (A) ANY DISCUSSION OF FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS OR PRECONFIRMATION EQUITY INTERESTS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE COMPANY OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS AND PRECONFIRMATION EQUITY INTERESTS SHOULD SEEK ADVICE BASED ON ITS PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

**TABLE OF CONTENTS**

I - INTRODUCTION ..................................................................................................1

1.1    Overview of the Prepackaged Plan .................................................................1

1.2    Opportunity for Additional Equity Participation in Reorganized ARTICLE Tetragenex.......................................................................................................4

1.3    Voting ..........................................................................................................4

1.4    Solicitation Process......................................................................................4

1.5    Voting Procedures........................................................................................5

1.6    Petition Date................................................................................................6

1.7    Confirmation Hearing ..................................................................................6

ARTICLE II - GENERAL BACKGROUND ...............................................................6

2.1    The History of Tetragenex ...........................................................................6

2.2    Prepetition Capital Structure........................................................................7

2.3    Prepetiton Board and Management of the Company .........................................8

ARTICLE III - THE REORGANIZATION CASE.......................................................8

3.1    Anticipated Timeline of the Reorganization Case ..........................................8

3.2    Confirmation of the Prepackaged Plan .........................................................9

3.3    Ordinary Course Operations After the Petition Date .......................................9

ARTICLE IV - SUMMARY OF THE PREPACKAGED PLAN .................................10

4.1    Unclassified Claims (not entitled to vote on the Prepackaged Plan) ................10

4.2    Unimpaired Classes of Claims (deemed to have accepted the Prepackaged Plan and not entitled to vote) ...........................................................................11

4.3    Impaired Classes of Claims (entitled to vote on the Prepackaged Plan) ...........11

4.4    Opportunity for Additional Equity Participation in Reorganized Tetragenex.....................................................................................................11

ARTICLE V - TREATMENT OF CLAIMS AND INTERESTS..................................11

5.1    Unclassified Claims ....................................................................................11

5.2    Unimpaired Claims .....................................................................................12

5.3    Impaired Claims.........................................................................................12

5.4    Allowed Claims and Interests; Deemed Allowed Claims and Interests .............13

5.5    Reservation of Rights to Object to Claims and Interests ....................................13

5.6    Objections to Claims and Interests ....................................................................13

ARTICLE VI  - ACCEPTANCE OR REJECTION OF THE PREPACKAGED
           PLAN ...........................................................................................................14

6.1    Impaired Classes of Claims Entitled to Vote ....................................................14

6.2    Acceptance by an Impaired Class ......................................................................14

6.3    Presumed Acceptances by Unimpaired Classes ................................................14

6.4    Summary of Classes Voting on the Prepackaged Plan ......................................14

6.5    Confirmation Pursuant to Bankruptcy Code section 1129(b)...........................14

ARTICLE VII  - MEANS FOR IMPLEMENTATION OF THE PREPACKAGED
           PLAN ...........................................................................................................14

7.1    Corporate Existence and Re-vesting of Assets .................................................14

7.2    Board of Directors of Reorganized Tetragenex. ...............................................15

7.3    Officers of Reorganized Tetragenex. .................................................................15

7.4    Vesting of Assets ...............................................................................................15

7.5    Issuance of New Common Shares to Holders of Class 3 Claims. .....................15

7.6    Issuance of New Options to Holders of Class 4 Claims. ...................................15

7.7    Execution of Documents and Corporate Action ................................................15

7.8    Surrender of Instruments....................................................................................16

7.9    Bankruptcy Code Section 1145 Determination .................................................16

7.10   Release of Liens .................................................................................................17

7.11   Exemption from Certain Transfer Taxes ...........................................................17

7.12   Effectuating Documents; Further Transactions .................................................17

ARTICLE VIII  - Additional Equity Investments....................................................17

ARTICLE IX  - PROVISIONS GOVERNING DISTRIBUTIONS ..............................19

9.1    Delivery of Undeliverable or Unclaimed Distributions.....................................19

9.2    Prepayment ........................................................................................................19

9.3    Means of Cash Payment......................................................................................19

9.4    Sources of Cash for Plan Distribution ...............................................................19

9.5    Disbursement Agent............................................................................................19

9.6      Record Date for Distribution ..............................................................20

9.7      Interest on Claims ..............................................................................20

9.8      Withholding and Reporting Requirements .........................................20

9.9      Setoffs ...............................................................................................21

9.10    De Minimis Distributions ...................................................................21

9.11    Fractional Dollars...............................................................................21

9.12    Allocation of Plan Distributions Between Principal and Interest ......21

ARTICLE X  - Disputed, Contingent, and/or Unliquidated Claims ...............21

10.1    Prosecution of Objections .................................................................21

10.2    No Distributions Pending Allowance .................................................22

ARTICLE XI  - EXECUTORY CONTRACTS AND UNEXPIRED LEASES..............22

11.1    Assumption and Rejection of Executory Contracts and Unexpired Leases .......22

11.2    Assumed Contract Schedule ..............................................................23

11.3    Deemed Assumption Subject to Revocation.......................................23

11.4    Payment of Cure Amounts..................................................................23

11.5    Rejection Damages .............................................................................24

ARTICLE XII  - CONDITIONS PRECEDENT TO CONFIRMATION AND
           CONSUMMATION OF THE PREPACKAGED PLAN ...................24

12.1    Conditions to Effective Date..............................................................24

12.2    Waiver of Conditions.........................................................................24

ARTICLE XIII  - ALLOWANCE AND PAYMENT OF CERTAIN
           ADMINISTRATIVE EXPENSE CLAIMS.........................................25

13.1    Final Fee Applications .......................................................................25

13.2    Employment of Professionals after the Effective Date......................25

ARTICLE XIV  - EFFECTS OF CONFIRMATION .....................................25

14.1    Binding Effect ...................................................................................25

14.2    Discharge ...........................................................................................25

14.3    Injunction ..........................................................................................26

14.4    Term of Bankruptcy Injunction or Stays ...........................................27

14.5    Compromises and Settlements............................................................27

14.6    Satisfaction of Subordination Rights ...................................................................27

14.7    Exculpation and Limitation of Liability ............................................................27

14.8    Indemnification Obligations ...........................................................................28

ARTICLE XV  - RETENTION OF JURISDICTION ....................................................29

15.1    Matters Which the Bankruptcy Court Shall Retain Exclusive Jurisdiction........29

ARTICLE XVI  - CONFIRMATION ...............................................................................31

16.1    Standard for Confirmation ..............................................................................31

16.2    Acceptance ..................................................................................................32

16.3    Feasibility......................................................................................................32

16.4    Best Interests Test; Liquidation Analysis ........................................................32

16.5    Compliance with Applicable Provisions of the Bankruptcy Code ...................33

ARTICLE XVII  - CERTAIN RISK FACTORS TO BE CONSIDERED .....................33

17.1    Objection to Classifications ...........................................................................34

17.2    Risk of Non-Confirmation of the Prepackaged Plan .........................................34

ARTICLE XVIII  - CERTAIN FEDERAL INCOME TAX CONSEQUENCES ...........34

18.1    Tax Consequences Uncertain............................................................................34

18.2    Allocation of Consideration to Interest............................................................35

18.3    Recommendation to Consult Tax Advisor.........................................................35

ARTICLE XIX  - ALTERNATIVES TO CONFIRMATION AND
                CONSUMMATION OF THE PREPACKAGED PLAN ...................................36

ARTICLE XX  - CONCLUSIONS AND RECOMMENDATION ................................36

## TABLE OF EXHIBITS

**Exhibit A    -    Prepackaged Plan of Reorganization**

# ARTICLE I
## INTRODUCTION

Tetragenex Pharmaceuticals, Inc. ("<u>Tetragenex</u>"), a Delaware corporation, (the "<u>Company</u>" or "<u>Debtor</u>"), submit this disclosure statement (the "<u>Disclosure Statement</u>") pursuant to sections 1125 and 1126(b) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), and rule 3017 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and ballots for use in the solicitation of votes in accordance with section 1126(b) of the Bankruptcy Code (the "<u>Solicitation</u>") on the Prepackaged Plan of Reorganization of Tetragenex, dated as of August 10, 2010 (including all Plan Exhibits and the Plan Supplement, the "<u>Prepackaged Plan</u>")[2]. The Prepackaged Plan is being proposed by the Company and, so long as the Class of Secured Claims votes in favor of the Prepackaged Plan, they anticipate filing the Prepackaged Plan with the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>"). A copy of the Prepackaged Plan is annexed as Exhibit 1 to this Disclosure Statement.

The purpose of this Disclosure Statement is to assist each holder of Claims entitled to vote on the Prepackaged Plan in making an informed judgment regarding whether to vote to accept or reject the Prepackaged Plan. This Disclosure Statement sets forth certain information regarding (i) the Company's prepetition operating and financial history; (ii) the Company's need for restructuring of its financial obligations; (iii) the terms of the Prepackaged Plan and alternatives to the Prepackaged Plan; (iv) certain effects of confirmation of the Prepackaged Plan; (v) certain risk factors associated with securities to be issued under the Prepackaged Plan; (vi) the manner in which distributions will be made under the Prepackaged Plan; (vii) the confirmation process and the voting procedures that holders of Claims entitled to vote under the Prepackaged Plan must follow for its votes to be counted; (viii) significant events that are expected to occur during the Reorganization Case; and (ix) the anticipated organization, operations, liquidity and financial projections of Tetragenex upon emergence from chapter 11 of the Bankruptcy Code ("<u>Reorganized Tetragenex</u>").

### 1.1    Overview of the Prepackaged Plan

The Prepackaged Plan provides for (i) the emergence of the Debtor from bankruptcy as Reorganized Tetragenex and the re-vesting of the Debtor's assets in Reorganized Tetragenex free and clear of any liens, encumbrances or other interests; and (ii) the resolution of all outstanding Claims against and Interests in the Debtor.

The Prepackaged Plan divides most Claims against, and Interests in, the Company into Classes. Administrative Expense Claims and Priority Tax Claims remain unclassified in accordance with section 1123(a)(1) of the Bankruptcy Code. The Prepackaged Plan assigns all other Claims and Interests into 5 classes, which will receive distributions under the Prepackaged Plan, if any, as described below.

- Holders of unclassified Administrative Expense Claims and Priority Tax Claims will receive (i) payment in full under the Prepackaged Plan or (ii) such other

---

[2]     Any capitalized term not herein defined shall have the meaning ascribed to it in the Prepackaged Plan.

treatment as to which such holder and the Company shall have agreed upon in writing. Company Counsel has agreed to accept interests in Reorganized Tetragenex as payment of its fees.

- Class 1 consists of Other Priority Claims. The holders of Other Priority Claims will receive (i) Cash equal to the unpaid portion of the Face Amount of such Allowed Other Priority Claim, or (ii) such other treatment as to which such holder and the Company shall have agreed upon in writing.

- Class 2 consists of Secured Claims. The holders of Secured Claims will receive (i) Cash equal to the value of its Allowed Secured Claim, (ii) a return of the holder's collateral securing the Secured Claim, or (iii) such other treatment as to which such holder and Reorganized Tetragenex shall have agreed upon in writing. (The holder of the Class 2 Claim, a $85,000 note secured by the Company's patents, has agreed to receive 8,500,000 shares of the reorganized company's stock in satisfaction for the Claim.)

- Class 3 consists of General Unsecured Claims. The holders of General Unsecured Claims receive a Pro Rata share of the General Unsecured Claim Consideration, which shall be comprised of 115,573,567 shares of newly issued Tetragenex's common stock, par value $0.001. The General Unsecured Claim Consideration shall constitute 76.86% of the outstanding shares of Reorganized Tetragenex (subject to dilution by the Subscription described in Article VIII below).

- Class 4 consists of all holders of outstanding Tetragenex options and warrants (the "Old Options"). In exchange for each Old Option, Class 4 Claim holders shall receive new options (the "New Options") with same maturity date and strike price of their Old Options.

- Class 5 consists of all holders of existing Tetragenex common stock ("Common Stock"). The holders of Common Stock will retain their shares. The distribution of the General Unsecured Claim Consideration to Class 3 will dilute Class 5 holders' interest in Reorganized Tetragenex to a pro Rata portion of 12.5% of the outstanding shares of Reorganized Tetragenex (subject to dilution by the Subscription described in Article VIII below).

The following table briefly summarizes the classification, treatment and estimated recoveries of Claims and Interests under the Prepackaged Plan. The table also identifies the Class entitled to vote on the Prepackaged Plan under the rules established by the Bankruptcy Code. For the purpose of the estimated recovery column, Reorganized Tetragenex is valued at $50,000.

| Class [Allowed Claim or Interest] | Treatment | Estimated Amount of Claims in Class[3] | Recovery | Status |
|---|---|---|---|---|
| N/A [Administrative Expense Claims] | Payment in full, in Cash, or as otherwise agreed, or, if incurred in the ordinary course, in accordance with the terms and conditions of any agreements relating thereto. | Undetermined | 100% | Unclassified and Unimpaired. Not entitled to vote. |
| N/A [Priority Tax Claims] | Payment in full, in Cash, or as otherwise agreed. | $0 | 100% | Unclassified and Unimpaired. Not entitled to vote. |
| Class 1 [Other Priority Claims] | Payment in full, in Cash, or as otherwise agreed. | $0 | 100% | Unimpaired; deemed to accept the Prepackaged Plan and not entitled to vote |
| Class 2 [Secured Claims] | Payment in full, in Cash, a return of the Collateral, or as otherwise agreed. | $85,000 | 100% | Unimpaired; deemed to accept the Prepackaged Plan and not entitled to vote |
| Class 3 [General Unsecured Claims] | Pro Rata share of the Unsecured Claim Consideration. | $3,500,000 | 1% | Impaired; entitled to vote |
| Class 4 [Option Holders] | Receiving New Options | n/a | n/a | Impaired; entitled to vote |
| Class 5 [Common Stockholders] | Retaining Common Stock | 18,798,348 Shares | 12.5% | Impaired; entitled to vote |

---

[3] "Estimated Amount of Claims in Class" refers to Claims within a given Class as determined based on, among other things, the Debtor's books and records as of July 31, 2010. The Debtor reserves the right to dispute, or assert offsets or defenses to any Claim as to amount, liability or status regardless of whether it was included in the Estimated Amount of Claims in Class set forth above. All amounts stated have been rounded to the nearest whole dollar.

**THE COMPANY IS THE SOLE PROPONENT OF THE PREPACKAGED PLAN
AND SUPPORT CONFIRMATION OF THE PREPACKAGED PLAN.**

      **1.2**     **Opportunity for Additional Equity Participation in Reorganized Tetragenex.**

As described in Article VIII below, the Company has distributed to all known Claim and Interest Holders a Subscription Form offering additional equity investments in Reorganized Tetragenex. A maximum of 36,000,000 New Common Shares may be sold at the Subscription Share Price, raising a maximum of $1,080,000.

      **1.3**     **Voting**

Any Creditor or holder of an Interest whose legal, contractual, or equitable rights are altered, modified, or changed by the proposed treatment under the Prepackaged Plan or whose treatment under the Prepackaged Plan is not provided for in section 1124 of the Bankruptcy Code is considered "impaired." All holders of Claims against, or Interests in, the Company will receive a copy of this Disclosure Statement.

Only Persons who hold Claims that are impaired under the Prepackaged Plan and are not deemed to have rejected the Prepackaged Plan are entitled to vote on the Prepackaged Plan. Classes 3 and 4 are deemed impaired, and the votes from Claim and Interest Holders in those Classes will be solicited with respect to the Prepackaged Plan.

      **1.4**     **Solicitation Process**

The following documents and materials will constitute the Company's Solicitation Package (the "Solicitation Package"):

- PLAN,

- DISCLOSURE STATEMENT,

- APPROPRIATE BALLOT AND VOTING INSTRUCTIONS,

- SUBSCRIPTION FORM, AND

- PRE-ADDRESSED, POSTAGE PREPAID RETURN ENVELOPE.

The Company has retained Omni Management Group to act as its noticing agent (the "Notice Agent"). The Company, through the Notice Agent, will distribute the Solicitation Packages no fewer than twenty-one (21) calendar days before the Voting Deadline. The Solicitation Package (including ballots and voting instructions) will be distributed to holders of Claims in Classes 3, 4 and 5.

Solicitation Packages may be obtained by contacting the Company's Notice Agent, Attn: Nova George, 818-906-8300.

The Prepackaged Plan and Disclosure Statement and Subscription Form only will be distributed to Holders of Priority Tax, Class 1 and Class 2 Claims.

### 1.5 Voting Procedures

Only Holders of Claims in Class 3, Class 4, and 5 on the Voting Record Date are entitled vote.

**The Voting Deadline is 5:00 p.m. prevailing Eastern Time on September 3, 2010**. To ensure that a vote is counted, holders of Claims in Classes 3 and 4 must: (a) complete the Ballot; (b) indicate a decision either to accept or reject the Prepackaged Plan; and (c) sign and return the Ballot in the pre-addressed envelope provided in the Solicitation Package (Omni Management Group, 16501 Ventura Blvd., Suite 440, Encino, CA 91436) by first-class mail, overnight courier, or personal delivery, so that all Ballots are **actually received** by the Notice Agent no later than the Voting Deadline.

ANY BALLOT THAT IS PROPERLY EXECUTED BUT THAT DOES NOT CLEARLY INDICATE AN ACCEPTANCE OR REJECTION OF THE PREPACKAGED PLAN OR INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PREPACKAGED PLAN WILL NOT BE COUNTED.

EACH HOLDER OF A CLAIM MUST VOTE ALL OF ITS CLAIM WITHIN A PARTICULAR CLASS EITHER TO ACCEPT OR REJECT THE PREPACKAGED PLAN AND MAY NOT SPLIT SUCH VOTES. IF YOU CAST MORE THAN ONE BALLOT VOTING THE SAME CLAIM ON OR BEFORE THE VOTING DEADLINE, THE LAST BALLOT RECEIVED BEFORE THE VOTING DEADLINE WILL BE DEEMED TO REFLECT YOUR INTENT AND THUS WILL SUPERSEDE ALL PRIOR BALLOTS.

---

**IF A BALLOT IS RECEIVED AFTER THE VOTING DEADLINE, IT WILL NOT BE COUNTED UNLESS THE COMPANY DETERMINE OTHERWISE.**

---

Prior to deciding whether and how to vote on the Prepackaged Plan, each holder in a voting Class should consider carefully all of the information in this Disclosure Statement, especially the risk factors described herein.

For further information and general instructions on voting to accept or to reject the Prepackaged Plan, see Article VI of this Disclosure Statement and the instructions accompanying your ballot.

**THE COMPANY URGES ALL HOLDERS OF CLASS 3, 4 AND 5 CLAIMS TO EXERCISE THEIR RIGHT TO VOTE BY COMPLETING THEIR BALLOTS AND RETURNING THEM AS QUICKLY AS POSSIBLE.**

### 1.6 Petition Date

The Company anticipates that as soon as practicable after the Voting Deadline, they will commence petitions under chapter 11 of the Bankruptcy Code in order to effectuate the terms of the Prepackaged Plan.

### 1.7 Confirmation Hearing

The Company anticipates that as soon as practicable after the Petition Date, they will seek an order of the Bankruptcy Court scheduling the hearing to consider (1) the adequacy of this Disclosure Statement and the Solicitation and (2) confirmation of the Prepackaged Plan.

## ARTICLE II
## GENERAL BACKGROUND

### 2.1 The History of Tetragenex

Tetragenex Pharmaceuticals, Inc., has been attempting to commercialize a treatment for refractory depression for over 16 years. Shares of Tetragenex common stock trade on the bulletin board under the symbol (TTRX). The Company started life as Innapharma Inc., in 1989. The Company changed its name to Tetragenex in 2004 after confirming plan of reorganization (Case No. 03-82550-288.

From 1989 until 1993, the Company continued to struggle as money losing contract research organization, bio-consulting firm and biotechnology company. It developed a proprietary product, a platform of peptides that Innapharma's bench chemists created for the possible treatment of diseases of the central nervous system ("CNS"). This platform of peptides had shown significant activity in stress induced preclinical rodent studies specifically designed to demonstrate efficacy for the treatment of depression.

In 1994 The Company received $8 million of equity funding raised by a M.S. Farrell & Co., Inc., principally to bring the peptide platform forward to treat depression and other CNS diseases. Martin F. Schacker, a principal at M.S. Farrell and Dave Abel, a large investor, joined the Company as outside directors; neither took on officer or management responsibilities.

From 1994 through 1998, the Company experienced a number of funding shortfalls. As a result, in 1998 the Company's board of directors appointed Schacker to the position of Chief Executive Officer. Thereafter, Schacker was elected to the position of Board Chairman.

Thereafter Dr. John Feigner joined the Company as President and Robert Budetti as joined the Company as Chief Operating officer. The pair had a combined 50 years in depression and CNS clinical experience; Dr. Feighner as a psycho-pharmacologist and Mr. Budetti as a Harvard MBA businessman who had structured and executed numerous antidepressant studies. Both took seats on the Board.

At the time, Dr. Feighner was very well regarded in the field of depression treatment. Besides running a research facility, he, along with Mr. Budetti founded and built International Clinical Research Inc., a well known, successful depression research clinic, which later was sold

to one of the largest contract research organization in the world. Throughout his career, Dr. Feighner had completed or was deeply involved in over 230 clinical trials involving almost thirty new antidepressants, eleven of which were successfully registered. He was responsible for bringing Prozac to the market. Dr. Feighner stated that he agreed to join the company because he felt the Company's drug under development, Nemifitide, was a the most unique and promising treatment for depression that he had seen in his 30 years of experience. When joining the Company, Dr. Feighner invested $5 million of his own money into the company.

Ken Cartwright (MD/Chp), an experienced scientist with substantial credentials in CNS and a co-founder of the original Company stayed on as a director and part-time consultant to help the new management team bring Nemifitide through the balance of development.

Nemifitide is given intermittently, usually 5-7 shots given over 7-14 days and the effects last 4-6 months following treatment. In studies, Nemifitide exhibited a rapid and robust onset of action and showed virtually no side effects. It has also shown positive results on treatment resistant (refractory) patients. Treatment resistant patients are individuals that have been on several if not all of the current classes and have not responded to any. It is estimated that ten percent of depressed patients are deemed treatment resistant. There are no current therapies for the treatment for refractory patients. The Company has conducted 13 FDA condoned clinical trials in over 430 patients in the U.S., with one of the studies being an open label study for and only for severely refractory patients.

From 1999 through 2006 the Company raised over $50 million dollars in additional equity.

Unfortunately, in 2006, Dr. Feighner passed away. Now, Nemifitide is no longer a viable drug for conventional U.S. development because of the expiration date of its patents. The patents in almost all other countries outside the United States have expired. However, Nemifitide is still a viable treatment option in several countries throughout Central America, Eastern Europe and the Caribbean, where the Company can become registered to administer treatments.

From 2006 through present, the Company has been attempting to restructure its debt and preserve its ability to administer Nemifitide treatments to patients. In 2009 the company filed for relief under chapter 11 of the Bankruptcy Code (Case No. 09-30775, Bankr. D.N.J. 2009). However, that case was dismissed because of the Company's inability to reach an agreement with its creditors.

Now that the Company has been able to reach agreements with its creditors and shareholders, the terms of which are embodied in the Prepackaged Plan, the Company will be able to restructure its debts and capital structure and proceed with its goal of providing treatment to people suffering from refractory cases of depression. It will do this by establishing or joining treatment clinics in countries where the Company can register Nemifitide and providing the treatment will be legal.

## 2.2 Prepetition Capital Structure

The following chart details the Company's capitalization structure as of August 10, 2010.

|  | Pre Petition Amount | Exercise Price | Expiration Date |
|---|---|---|---|
| Common Shareholders | 18,798,348 | | |
| Class B Warrants | 3,284,396 | $6.00 | 11/30/2011 |
| Class D Warrants | 645,322 | $1.65 | 3/30/2012 |
| Class E Warrants | 1,400,000 | $0.40 | 5/1/2013 |
| Class F Warrants | 900,000 | .03 | 4/1/15 |
| Options Held by Management and Consultants | 11,838,253 | $1.00 | 2017-2020 |
| Total Common Shares | 18,798,348 | | |
| Total Options | 18,067,971 | | |
| Total | 36,866,319 | | |

### 2.3    Prepetiton Board and Management of the Company

Martin Schacker is currently the Chairman, Co-CEO and President of the Company. David Abel is the Co-CEO, Treasurer and Secretary. The Company's board of directors consists of Martin Schacker, David Abel, Robert Budetti, Alf Akerman, Aaron Cohen, William Comer, Bruce Bergman and Kenneth Cartwright (the "Board").

## ARTICLE III
## THE REORGANIZATION CASE

### 3.1    Anticipated Timeline of the Reorganization Case

In a "prepackaged" chapter 11 case such as the Reorganization Case, agreement is reached between the debtor and one or more classes of its creditors on the terms of a restructuring before the filing occurs, and the bankruptcy case is used to implement the agreed upon plan and to deal with any creditors with whom there is no agreement. The creditors' votes are solicited before filing, and the Prepackaged Plan confirmation process starts immediately upon filing the chapter 11 case. Because prepackaged chapter 11 cases usually have little or no effect on the debtor's business operations, prepackaged chapter 11 cases often take less time to complete than more conventional bankruptcy cases. Greater certainty of results and reduced costs are other benefits generally associated with prepackaged bankruptcy cases.

The Company does not expect the Reorganization Case to be protracted. Holders of 100% of Class 2, 96% of Class 3 and 75% of Class 4 have expressed support for the

Prepackaged Plan as drafted and are expected to vote in to accept. The Company, therefore, intends to start the process of confirming the Prepackaged Plan on the first day of the Reorganization Case, by filing the Prepackaged Plan and this Disclosure Statement. The Company anticipates that as soon as practicable after the Petition Date, it will seek an order of the Bankruptcy Court scheduling a hearing to consider (i) the adequacy of this Disclosure Statement and the Solicitation and (ii) confirmation of the Prepackaged Plan.

### 3.2     Confirmation of the Prepackaged Plan

Assuming that the Bankruptcy Court approves the scheduling motion with respect to the Confirmation Hearing, the Company anticipates that the Confirmation Hearing will occur within approximately thirty-five (35) to forty-five (45) days after the Petition Date. The Company does not currently anticipate any significant objections to confirmation. However, if significant objections were to be raised, the anticipated timing for the Confirmation Hearing could be delayed. If Class 4 (Option Holders) or Class 5 (Common Shareholders) do not vote to accept the Prepackaged Plan, the Company will seek approval of the Prepackaged Plan under the "cram down" provisions of section 1129 of the Bankruptcy Code.

### 3.3     Ordinary Course Operations After the Petition Date

**The Debtor intends to continue to operate its business in the ordinary course throughout the Reorganization Case as it had prior to the Petition Date.**

To ensure "business as usual" operations and to expedite its emergence from chapter 11, on or shortly after the Petition Date, the Debtor will file motions seeking the relief detailed below, among other relief, from the Bankruptcy Court. Such relief, if granted, will facilitate the administration of the Reorganization Case. There can be no assurance, however, that the Bankruptcy Court will grant the relief sought.

These requests include, but are not limited to, the following:

#### 3.3.1     Payment in the Ordinary Course of Creditors Unaffected by the Filing of the Reorganization Case

The Company believes that good relations with its ongoing trade and other business vendors are essential to the continued operation of its business during the pendency of its Reorganization Case. Accordingly, and in light of Plan treating such creditors as unaffected by the chapter 11 filing, the Company intends to request an order of the Bankruptcy Court in its Reorganization Case authorizing payments to its ongoing trade vendors as they become due in the ordinary course of business, including any amounts that may relate to claims arising prior to the Petition Date.

### 3.3.2   Operation of Business

The Debtor will also seek various other orders to allow a smooth transition through the chapter 11 process. These may include, but are not limited to, orders permitting it to (i) pay certain insurance obligations, including workers' compensation insurance, medical obligations, and (ii) maintain its cash management systems.

## ARTICLE IV
## SUMMARY OF THE PREPACKAGED PLAN

THIS SECTION PROVIDES A SUMMARY OF THE STRUCTURE AND IMPLEMENTATION OF THE PREPACKAGED PLAN AND THE CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PREPACKAGED PLAN. THIS SECTION IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PREPACKAGED PLAN, WHICH IS <u>EXHIBIT 1</u> TO THIS DISCLOSURE STATEMENT. THE PREPACKAGED PLAN AND THE DOCUMENTS REFERRED TO THEREIN WILL CONTROL THE TREATMENT OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTOR. UPON THE EFFECTIVE DATE, THE PREPACKAGED PLAN WILL BE BINDING UPON HOLDERS OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTOR, THE REORGANIZED TETRAGENEX AND OTHER PARTIES IN INTEREST. IN THE EVENT OF ANY CONFLICT BETWEEN THIS DISCLOSURE STATEMENT AND THE PREPACKAGED PLAN OR ANY OTHER OPERATIVE DOCUMENT, THE TERMS OF THE PREPACKAGED PLAN AND/OR SUCH OTHER OPERATIVE DOCUMENT WILL CONTROL.

All Claims and Interests, except Administrative Expense Claims and Priority Tax Claims, are placed in the Classes set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims, as described below, have not been classified.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Prepackaged Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

### 4.1   <u>Unclassified Claims (not entitled to vote on the Prepackaged Plan)</u>

#### 4.1.1   Administrative Expense Claims

#### 4.1.2   Priority Tax Claims

**4.2 Unimpaired Classes of Claims (deemed to have accepted the Prepackaged Plan and not entitled to vote)**

        4.2.1    Class 1: Other Priority Claims

        4.2.2    Class 2: Secured Claims

**4.3 Impaired Classes of Claims (entitled to vote on the Prepackaged Plan)**

        4.3.1    Class 3: General Unsecured Claims

        4.3.2    Class 4: Option Holders

**4.4 Opportunity for Additional Equity Participation in Reorganized Tetragenex.**

        4.4.1    Class 5: Common Stock Holders (impaired and entitled to vote)

## ARTICLE V
## TREATMENT OF CLAIMS AND INTERESTS

**5.1 Unclassified Claims**

        5.1.1    Administrative Expense Claims

Except as otherwise provided herein, and subject to the requirements of the Prepackaged Plan, on, or as soon as reasonably practicable after the later of (i) the Effective Date or (ii) the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, a holder of an Allowed Administrative Expense Claim shall paid in full in satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Expense Claim.

Company's counsel has agreed to accept (a) 7,500,000 Common Shares in full satisfaction of its postpetition fees, and (b) payment in full for its postpetition expenses. Such payment arrangement is subject to the approval of the Bankruptcy Court.

        5.1.2    Priority Tax Claims

Except as otherwise provided herein, and subject to the requirements of the Prepackaged Plan, on, or as soon as reasonably practicable after the later of (i) the Effective Date or (ii) the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, a holder of an Allowed Priority Tax Claim shall paid in full in satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim.

The unclassified Claims are unimpaired and, therefore, holders of unclassified Claims are not entitled to vote, to accept or reject the Prepackaged Plan.

### 5.2 Unimpaired Claims

#### 5.2.1 Class 1:  Other Priority Claims

Except as otherwise provided herein, and subject to the requirements of the Prepackaged Plan, on, or as soon as reasonably practicable after the later of (i) the Effective Date or (ii) the date such Other Priority Claim becomes an Allowed Other Priority Claim, a holder of an Allowed Other Priority Claim shall paid in full in satisfaction, settlement, release, and discharge of and in exchange for such Allowed Other Priority Claim.

Class 1 is unimpaired and, therefore, holders of Class 1 Claims are not entitled to vote, to accept or reject the Prepackaged Plan.

#### 5.2.2 Class 2:  Secured Claims

On or as soon as reasonably practicable after, the later of (i) the Effective Date, or (ii) the date such Secured Claim becomes an Allowed Secured Claim, a holder of an Allowed Secured Claim shall receive from Reorganized Tetragenex, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Secured Claim, (a) Cash equal to the value of its Allowed Secured Claim, (ii) a return of the holder's collateral securing the Allowed Secured Claim, or (iii) such other treatment as to which such holder and Reorganized Tetragenex shall have agreed upon in writing.

Class 2 is unimpaired and, therefore, holders of Class 2 Claims are not entitled to vote, to accept or reject the Prepackaged Plan. The sole holder of Class 2 Claims has agreed to accept 8,500,000 Common Shares in full satisfaction of its Claim.

### 5.3 Impaired Claims

#### 5.3.1 Class 3:  General Unsecured Claims

On or as soon as reasonably practicable after, the later of (i) the Effective Date, or (ii) the date such General Unsecured Claim becomes an Allowed General Unsecured Claim, a holder of an Allowed General Unsecured Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed General Unsecured Claim shall receive a Pro Rata share of the General Unsecured Claim Consideration, which consists of 115,573,567 Common Shares and represents 62% of the equity of Reorganized Tetragenex (before dilution from additional equity investments through the Subscription, as described in Article VIII, above).

Class 3 is impaired and, therefore, holders of Class 3 Claims are entitled to vote to accept or reject the Prepackaged Plan.

#### 5.3.2 Class 4:  Options

All Old Options will be cancelled and each Class 4 Claim Holders will receive a New Option with the same maturity date and strike price.  Because the Common Shares for which the Options can be converted have been diluted, the Company is treating Class 4 Claims as impaired.

Accordingly, holders of Class 4 Claims are entitled to vote to accept or reject the Prepackaged Plan.

### 5.3.3   Class 5: Common Stock

The holders Common Shares will retain their shares. The distribution of the General Unsecured Claim Consideration to Class 3 will dilute Class 5 holders' interest in Reorganized Tetragenex such that such holders will hold a Pro Rata portion of 12.5% of the outstanding shares of Reorganized Tetragenex (before dilution from additional equity investments through the Subscription, as described in Section I.B, above).

Class 5 is impaired and, therefore, holders of Class 5 Interests are entitled to vote to accept or reject the Prepackaged Plan.

### 5.4   Allowed Claims and Interests; Deemed Allowed Claims and Interests

Notwithstanding any provision herein to the contrary, Reorganized Tetragenex shall only make distributions to holders of Allowed Claims and Interests. No holder of a Disputed Claim and Interests will receive any distribution on account thereof until (and then only to the extent that) its Disputed Claim or Interests becomes an Allowed Claim or Interest. Reorganized Tetragenex may, in its discretion, withhold distributions otherwise due hereunder to any Claimholder or Interestholder until such time as objections thereto may be filed. Any holder of a Claim or Interest that becomes an Allowed Claim or Interest after the Effective Date will receive its distribution in accordance with the terms and provisions of the Prepackaged Plan

### 5.5   Reservation of Rights to Object to Claims and Interests

Unless a Claim or Interest is expressly described as an Allowed Claim or Interest pursuant to or under the Prepackaged Plan, or otherwise becomes an Allowed Claim or Interest prior to or after the Effective Date, the Company and Reorganized Tetragenex reserve any and all objections to any and all Claims and Interests and motions or requests for the payment of Claims and Interests, whether administrative expense, priority, secured, or unsecured, including, without limitation, any and all objections to the validity or amount of any and all alleged Claims and security interests, whether under the Bankruptcy Code, other applicable law or contract. The Company or Reorganized Tetragenex's failure to object to any Claim or Interest in the bankruptcy cases shall be without prejudice to Reorganized Tetragenex's rights to contest or otherwise defend against such Claim or Interest in the Court when and if such Claim or Interest is sought to be enforced. The Company and Reorganized Tetragenex reserve the right to utilize any Cause of Action against any Claimholder or Interest Holder as a setoff against such holder's Claim Interest.

### 5.6   Objections to Claims and Interests

Unless otherwise provided in the Prepackaged Plan or by order of the Court, any objections to Claims and Interests will be filed and served not later than 120 days after the Effective Date, provided that Reorganized Tetragenex may request (and the Court may grant) an

extension of such deadline by filing a motion with the Court, based upon a reasonable exercise of Reorganized Tetragenex's business judgment. A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to the Prepackaged Plan.

## ARTICLE VI
## ACCEPTANCE OR REJECTION OF THE PREPACKAGED PLAN

### 6.1 Impaired Classes of Claims Entitled to Vote

Subject to Article III of the Prepackaged Plan, Claimholders and Interest Holders in each Impaired Class of Claims as of the Voting Record Date are entitled to vote as a Class to accept or reject the Prepackaged Plan.

### 6.2 Acceptance by an Impaired Class

In accordance with Bankruptcy Code section 1126(c) and except as provided in Bankruptcy Code section 1126(c), an Impaired Class of Claims shall have accepted the Prepackaged Plan if the Prepackaged Plan is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Prepackaged Plan.

### 6.3 Presumed Acceptances by Unimpaired Classes

Unclassified Claims and Class 1 are Unimpaired by the Prepackaged Plan. Under Bankruptcy Code section 1126(f), such Claimholders are conclusively presumed to accept the Prepackaged Plan, and the votes of such Claimholders will not be solicited.

### 6.4 Summary of Classes Voting on the Prepackaged Plan

As a result of the provisions of Articles II and III of the Prepackaged Plan, the votes of Claim and Interest Holders in Classes 2, 3, 4 and 5 will be solicited with respect to the Prepackaged Plan.

### 6.5 Confirmation Pursuant to Bankruptcy Code section 1129(b)

In the event Class 4 or 5 votes to reject the Prepackaged Plan the Company will seek Confirmation of the Prepackaged Plan from the Court under the procedures set forth in section 1129(b) of the Bankruptcy Code. The Company reserves the right to alter, amend, modify, revoke, or withdraw the Prepackaged Plan or any Plan Supplement or schedule as may be necessary to satisfy the requirements of Bankruptcy Code section 1129(b).

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PREPACKAGED PLAN

### 7.1 Corporate Existence and Re-vesting of Assets

Tetragenex will continue to exist after the Effective Date and be governed by the Restated Bylaws and the Restated Certificate of Incorporation will be included in the Plan Supplement.

The Restated Certificate of Incorporation will, among other things, (A) authorize the New Common Shares, and (B) pursuant to section 1123(a)(6) of the Bankruptcy Code, include a provision prohibiting the issuance of nonvoting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code. Any modification to the Restated Certificate of Incorporation as originally filed may be filed after the Confirmation Date and may become effective on or prior to the Effective Date. After the Effective Date, the Reorganized Tetragenex may file an amended and restated certificate of incorporation (or other formation documents, if applicable) with the Secretary of State in any appropriate jurisdiction.

### 7.2    Board of Directors of Reorganized Tetragenex.

On the Effective Date, the operation of Reorganized Tetragenex shall be the responsibility of its Board, subject to, and in accordance with, the Restated Certificate of Incorporation and the Restated Bylaws. The Board shall initially be comprised of the eight members currently serving; each of which has indicated a willingness to serve an additional five years term commencing from the Effective Date of the Prepackaged Plan.

### 7.3    Officers of Reorganized Tetragenex.

The individuals currently serving as the senior officers of the Company will continue to serve in the same capacities through and following the Effective Date subject to any changes disclosed in the Plan Supplement. After the Effective Date, the selection and removal of officers of Reorganized Tetragenex shall be as provided in the respective Restated Certificate of Incorporation and/or Restated Bylaws or other organizational documents of Reorganized Tetragenex. Each of the current officers of the Company has indicated a willingness to serve an additional five years term commencing from the Effective Date of the Prepackaged Plan.

### 7.4    Vesting of Assets

On the Effective Date, all assets held by the Debtor immediately before the Effective Date shall vest in Reorganized Tetragenex, free and clear of all liens, claims, encumbrances and other interests.

### 7.5    Issuance of New Common Shares to Holders of Class 3 Claims.

On the Effective Date, the General Unsecured Claim Consideration shall be issued and distributed to the holders of Class 3 Claims on a Pro Rata basis and as otherwise described herein.

### 7.6    Issuance of New Options to Holders of Class 4 Claims.

On the Effective Date, Class 4 Claim Holders will be issued New Options with the same maturity date and strike price as their Old Option.

### 7.7    Execution of Documents and Corporate Action

Upon the occurrence of the Effective Date, all actions contemplated by the Prepackaged Plan shall be deemed authorized and approved in all respects, including (i) adoption or

assumption, as applicable, of the agreements with existing management, (ii) selection of the directors and officers for Reorganized Tetragenex, (iii) the issuance and distribution of the New Common Shares, (iv) the adoption of the Restated Certificate of Incorporation and Restated Bylaws, and (v) all other actions contemplated by the Prepackaged Plan (whether to occur before or on the Effective Date). All matters provided for in the Prepackaged Plan involving the corporate structure of the Company or Reorganized Tetragenex, and any corporate action required by the Company or Reorganized Tetragenex in connection with the Prepackaged Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the equity security holders, directors or officers of the Company or Reorganized Tetragenex. On or (as applicable) prior to the Effective Date, the appropriate officers of the Company or Reorganized Tetragenex, as applicable, shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, and instruments contemplated by the Prepackaged Plan (or necessary or desirable to effect the transactions contemplated by the Prepackaged Plan) in the name of and on behalf of Reorganized Tetragenex. The Company and Reorganized Tetragenex are authorized and directed to deliver all documents and perform all actions reasonably contemplated with respect to implementation of the Prepackaged Plan. Martin Schacker is designated as the authorized representative of the Company (i) to execute on behalf of the Company, in a representative capacity and not individually, any documents or instruments after the Confirmation Date or the Effective Date that may be necessary to consummate the Prepackaged Plan, and (ii) to undertake any other action on behalf of the Company to consummate the Prepackaged Plan.

### 7.8 Surrender of Instruments

Class 5 Claimholders – holders of common shares – shall retain their shares. All other Claimholder holding a certificate or instrument evidencing a Claim against the Company or property of the Estates and whose Claims are treated under the Prepackaged Plan shall surrender such certificate or instrument to the Company or its designee (as applicable) on the Effective Date as a prerequisite to receiving any distribution under the Prepackaged Plan, unless the non-availability of such certificate or instrument is established to the satisfaction of the applicable party. If any holder of an Allowed Claim evidenced by a certificate or instrument canceled pursuant to the Prepackaged Plan fails to surrender such certificate or instrument, within one year after the Effective Date, its Claim for a distribution under the Prepackaged Plan on account of such certificate or instrument shall be discharged, and such holder shall be forever barred from asserting such Claim against the Company, Reorganized Tetragenex or its property. In such case, any property held on account of such Claim shall be disposed of pursuant to the provisions relating to unclaimed distributions in Article VI of the Prepackaged Plan.

### 7.9 Bankruptcy Code Section 1145 Determination

Confirmation of the Prepackaged Plan shall constitute a determination, in accordance with Bankruptcy Code section 1145, that (except with respect to an entity that is an underwriter as defined in Bankruptcy Code section 1145(b)) section 5 of the 1933 Act and any state or local law requiring registration for the offer or sale of a security or registration or licensing of an issuer of, underwriter of, broker or dealer in, a security do not apply to the offer, sale, or issuance of any securities under the Prepackaged Plan.

### 7.10  Release of Liens

Except as otherwise provided in the Prepackaged Plan, the Confirmation Order or in any document, instrument or other agreement created in connection with the Prepackaged Plan, on the Effective Date, all mortgages, deeds of trust, liens, encumbrances, security interests, or other interests against the property of the Estates shall be released.

### 7.11  Exemption from Certain Transfer Taxes

Pursuant to Bankruptcy Code section 1146(a), any transfers from the Company or Reorganized Tetragenex to any other Person or entity pursuant to the Prepackaged Plan in the United States shall not be subject to any stamp tax or similar tax, including without limitation state and county transfer and recordation taxes, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 7.12  Effectuating Documents; Further Transactions

The Company and Reorganized Tetragenex, subject to the terms and conditions of the Prepackaged Plan, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Prepackaged Plan.

## ARTICLE VIII
## ADDITIONAL EQUITY INVESTMENTS

All Claim and Interest Holders are being given the opportunity to contribute additional capital to purchase additional shares of Common Stock (the **"Subscription"**).  Included in the materials provided to all known Claim and Interest Holders is subscription form (the **"Subscription Form"**) pursuant to which such Claim or Interest Holder can purchase additional Common Stock at a price of $0.03/share (the **"Subscription Share Price"**).

Each party interested in participating in the Subscription shall send the completed Subscription Form along with payment in the amount of shares sought multiplied by the Subscription Share Price.  The Subscription Form and payment must be sent to the Notice Agent on or before September 3, 2010, the Voting Deadline.  All funds received will be held in escrow pending the closing or termination of the Subscription.  Any Subscription Form and payment received after such date may be denied and returned by the Company.

A maximum of 36,000,000 new Common Shares (the **"Subscription Limit"**) shall be issued under the Subscription, raising a maximum of $1,080,000..  In the event the aggregate of new Common Shares sought exceeds the Subscription Limit, each entity seeking to participate in the Subscription will be entitled to purchase shares in an amount equal to the Subscription Limit multiplied by the amount of shares sought by such entity divided by the aggregate amount of shares sought by all participants.

Pursuant to Bankruptcy Code Section 1145, Section 5 of the Securities Act of 1933 and any State and local law requiring registration for an offer or sale of a security or registration or licensing of an insurer of, underwriter of, or broker or dealer in, a security do not apply to the Subscription.

In the event the maximum number of new Common Shares are sold pursuant to the Subscription, the interests in the Reorganized Tetragenex will be held as follows:

| HOLDER | COMMON SHARES/WARRANTS HELD | PERCENTAGE OF COMMON SHARES OF REORGINIZED TETRAGENEX | FULLY DILUTED PERCENTAGE OWNERSHIP REORGINIZED TETRAGENEX |
|---|---|---|---|
| Administrative Expense Claims, Including Claims of Company's Counsel | 7,500,000 | 4.02% | 2.56% |
| Class 2 Secured Claim Holder | 8,500,000 | 4.56% | 2.91% |
| Class 3 Claim Holders | 115,573,567 | 62.01% | 39.52% |
| Class 5 Equity Holders | 18,798,348 | 10.09% | 6.43% |
| Holders of New Common Shares Sold Through Subscription | 36,000,000 | 19.32% | 12.31% |
| New Options Issued In Exchange for Old Options (Class 4) | 18,067,971 | | 6.18% |
| Options Reserved for Management | 28,000,000 | | 10.92% |
| Options Reserved for Directors | 44,000,000 | | 15.05% |
| Options Reserved for Consultants | 16,000,000 | | 5.47% |

## ARTICLE IX
## PROVISIONS GOVERNING DISTRIBUTIONS

### 9.1 Delivery of Undeliverable or Unclaimed Distributions

If the distribution to any holder of an Allowed Claim is returned to Reorganized Tetragenex as undeliverable or is otherwise unclaimed, no further distributions shall be made to such holder unless and until Reorganized Tetragenex is notified in writing of such holder's then-current address, at which time all missed distributions shall be made to such holder without interest.

Any holder of an Allowed Claim that does not assert a claim pursuant to the Prepackaged Plan for an undeliverable or unclaimed distribution within 90 days after the Effective Date shall be deemed to have forfeited its Claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed distribution against the Company, Reorganized Tetragenex and its respective agents, attorneys, representatives, employees or independent contractors, and/or any of its and its property. Nothing contained in the Prepackaged Plan shall require the Company or Reorganized Tetragenex to attempt to locate any holder of an Allowed Claim.

### 9.2 Prepayment

Except as otherwise provided in the Prepackaged Plan or in the Confirmation Order, the Company shall have the right to prepay, without penalty, all or any portion of an Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Other Priority Claim, or Allowed Secured Claim at any time.

### 9.3 Means of Cash Payment

Cash payments made pursuant to the Prepackaged Plan shall be in U.S. dollars and shall be made at the option and in the sole discretion of Reorganized Tetragenex by (i) checks drawn on, or (ii) wire transfers from a domestic bank.

### 9.4 Sources of Cash for Plan Distribution

Except as otherwise provided in the Prepackaged Plan or Confirmation Order, all Cash required for payments to be made hereunder shall be obtained from the Company and Reorganized Tetragenex's operations and Cash on hand.

### 9.5 Disbursement Agent

Reorganized Tetragenex, as Disbursement Agent, or such other Person designated by Reorganized Tetragenex as Disbursement Agent, shall make all distributions under the Prepackaged Plan. A Disbursement Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

### 9.6    Record Date for Distribution

Distributions shall only be made to the record holders of Allowed Claims and Interests as of the Confirmation Date.  At the close of business on the Confirmation Date, all registers maintained by the Company and Reorganized Tetragenex, and each of its respective agents, successors and assigns, shall be deemed closed for purposes of determining whether a holder of such a Claim is a record holder entitled to distributions under the Prepackaged Plan. The Company and Reorganized Tetragenex shall have no obligation to recognize any Claim that is transferred after the Confirmation Date. Instead, they shall be entitled to recognize only those record holders set forth in the registers as of the Confirmation Date, irrespective of the number of distributions made under the Prepackaged Plan or the date of such distributions. Furthermore, if a Claim is transferred twenty (20) or fewer calendar days before the Confirmation Date, the Disbursement Agent shall make distributions to the transferee only if the transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

If any dispute arises as to the identity of a holder of an Allowed Claim that is entitled to receive a distribution pursuant to the Prepackaged Plan, the Disbursement Agent may, in lieu of making such distribution to such Person, make the distribution into an escrow account until the disposition thereof is determined by Final Order or by written agreement among the interested parties to such dispute.

### 9.7    Interest on Claims

Unless otherwise specifically provided for in the Prepackaged Plan or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims.  Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

### 9.8    Withholding and Reporting Requirements

In accordance with Bankruptcy Code section 346 and in connection with the Prepackaged Plan and all distributions hereunder, the Company and Reorganized Tetragenex shall, to the extent applicable, comply with all withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority.  The Company and Reorganized Tetragenex shall be authorized to take any and all actions necessary and appropriate to comply with such requirements.

All distributions hereunder shall be subject to applicable legal withholding and reporting requirements.  As a condition of making any distribution under the Prepackaged Plan, Reorganized Tetragenex may require the holder of an Allowed Claim to provide such holder's taxpayer identification number, and such other information, certification or forms as necessary to comply with applicable tax reporting and withholding laws.  Notwithstanding any other provision of the Prepackaged Plan, each entity receiving a distribution pursuant to the Prepackaged Plan shall have sole and exclusive responsibility for the satisfaction and payment of tax obligations on account of any such distribution.

### 9.9    Setoffs

Except as otherwise provided by the terms of the Prepackaged Plan, Reorganized Tetragenex may, but shall not be required to, set off against any Claim and the payments or other distributions to be made under the Prepackaged Plan on account of the Claim, claims of any nature whatsoever that the Company and Reorganized Tetragenex may have against the holder thereof, provided, that any such right of setoff that is exercised shall be allocated, first, to the principal amount of the related Claim, and thereafter to any interest portion thereof, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Company or Reorganized Tetragenex of any such claim that the Company or Reorganized Tetragenex may have against such holder.

### 9.10   De Minimis Distributions

Reorganized Tetragenex shall have no obligation to make any distribution, whether final or not, unless and until the total amount of such distribution to a specific holder of an Allowed Claim is equal to or greater than $10.00 in the case of unclassified Claims and Class 1 and 2 Claims, and 100 New Common Shares in the case of Class 3 Claims.

### 9.11   Fractional Dollars

Any other provision of the Prepackaged Plan notwithstanding, Reorganized Tetragenex shall not be required to make distributions or payments of fractions of dollars or New Common Shares.  Whenever any payment of a fraction of a dollar or New Common Share under the Prepackaged Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar or New Common Share (up or down), with half dollars and half New Common Shares being rounded down.

### 9.12   Allocation of Plan Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a distribution under the Prepackaged Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated, for all income tax purposes, to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the claim, to the portion of such Claim representing accrued but unpaid interest.

## ARTICLE X
## DISPUTED, CONTINGENT, AND/OR UNLIQUIDATED CLAIMS

### 10.1   Prosecution of Objections

From the Confirmation Date through the Effective Date, only the Company may file objections, settle, compromise, withdraw, or litigate to judgment objections to Claims.  From and after the Effective Date, Reorganized Tetragenex may settle or compromise any Disputed Claim without approval of the Court.  Nothing contained herein, however, shall limit the right of Reorganized Tetragenex to object to Claims, if any, filed or amended after the Effective Date.

**10.2  No Distributions Pending Allowance**

Notwithstanding any other provision of the Prepackaged Plan, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

**ARTICLE XI**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**11.1  Assumption and Rejection of Executory Contracts and Unexpired Leases**

11.1.1 On the Effective Date, the Reorganized Tetragenex shall assume only those executory contracts and unexpired leases to which the Company is a party pursuant to sections 365 and 1123 of the Bankruptcy Code set forth in the Assumed Contract Schedule, included in the Plan Supplement. The Confirmation Order shall constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the contract and lease assumptions or rejections described herein, subject to the occurrence of the Effective Date.

11.1.2 To the extent applicable, all executory contracts of the Company assumed by Reorganized Tetragenex pursuant to the Prepackaged Plan shall be deemed modified such that the transactions contemplated by the Prepackaged Plan shall not be a "change of control," however such term may be defined in the relevant executory contract, and any required consent under any such contract or lease shall be deemed satisfied by the confirmation of the Prepackaged Plan, and all executory contracts assumed pursuant to the Prepackaged Plan shall be assumed notwithstanding any provisions therein that purport to modify any of the Company's rights thereunder as a result of the commencement of these Bankruptcy Cases.

11.1.3  Each executory contract assumed pursuant to the Prepackaged Plan (or pursuant to other Bankruptcy Court order) shall remain in full force and effect and be fully enforceable by Reorganized Tetragenex in accordance with its terms, except as modified by the provisions of the Prepackaged Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption or applicable law.

11.1.4 In the event that any license granted to the Company by a governmental unit in effect immediately prior to the Effective Date is considered to be an executory contract and is not otherwise terminated or rejected by the Company, such license shall be deemed to be assumed pursuant to section 365 of the Bankruptcy Code under this Prepackaged Plan.

11.1.5 Any monetary amounts required as cure payments on each executory contract and unexpired lease to be assumed pursuant to the Prepackaged Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure amount in Cash on the Effective Date or as soon thereafter as practicable or

upon such other terms and dates as the parties to such executory contracts or unexpired leases otherwise may agree. If there is a dispute regarding (i) the nature or amount of any Cure, (ii) the ability of the Reorganized Tetragenex to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (iii) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute.

## 11.2    Assumed Contract Schedule

The Assumed Contract Schedule to be included in the Plan Supplement, will contain a list of the Assumed Executory Contracts and the associated Cure amounts.  The non-Debtor parties to the Assumed Executory Contracts shall have until the Contract Objection Deadline to object to (i) the Cure Amounts listed by the Debtor and propose alternative Cure Amounts, and/or (ii) the proposed assumption of the Assumed Executory Contracts.  Any such objection to the Cure Amount or assumption must be filed with the Court on or before the Contract Objection Deadline and will be heard and determined by the Court.  Any such objection not filed by the Contract Objection Deadline shall be waived and forever barred.  Unless the Assumed Contract Schedule indicates differently, all assumed executory contract and unexpired leases shall be deemed to have a Cure Amount equal to zero dollars.

## 11.3    Deemed Assumption Subject to Revocation

To the extent the Court has not determined by the Effective Date the amount of any Cure Amount that is subject to a pending objection, the executory contract or unexpired eease related to such Cure Amount shall, at the option of Reorganized Tetragenex, be deemed assumed by Reorganized Tetragenex effective on the Effective Date; provided, however, Reorganized Tetragenex may revoke an assumption of any Executory Contract or Unexpired Lease within ten (10) days after entry of an order by the Court adjudicating the objection to the Cure Amount related to such executory contract and unexpired lease by filing a notice of such revocation with the Court and serving a copy on the party(ies) whose executory contract or unexpired lease is rejected.  Any executory contract or unexpired lease identified in such revocation notice shall be deemed rejected retroactively on the Effective Date.  Any party whose executory contract is rejected pursuant to a revocation notice may file a claim arising out of such rejection within thirty (30) days after such revocation notice is filed with the Court, and any such rejection claim not filed by that deadline shall be discharged and forever barred.  Reorganized Tetragenex shall have the right to object to any such rejection claim.

## 11.4    Payment of Cure Amounts

Within ten (10) Business Days after the Effective Date, Reorganized Tetragenex shall pay all Cure Amounts that are not disputed by the Debtor or Reorganized Tetragenex.  Unless otherwise ordered by the Court, Reorganized Tetragenex shall pay all Cure Amounts that are disputed by the Debtor or Reorganized Tetragenex on the later of the date that is ten (10) Business Days after (i) the Contract Objection Deadline, or (ii) the date of entry of a Final Order resolving the dispute or approving an agreement between the parties concerning the Cure Amount.

**11.5     Rejection Damages**

For all Claims relating to the rejection of Executory Contracts and Unexpired Leases, Proofs of Claim must be filed with the Court and served on the Debtor or Reorganized Tetragenex on or before the Rejection Claims Bar Date or such Claim shall be forever barred and shall not be enforceable against the Debtor, Reorganized Tetragenex or its successors.

Each Allowed Claim arising from the rejection of an Executory Contract shall be treated as an Allowed General Unsecured Claim. The Court shall determine the amount, if any, of the Claim of any entity seeking damages by reason of the rejection of any Executory Contract or Unexpired Lease.

**ARTICLE XII**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND CONSUMMATION OF THE PREPACKAGED PLAN**

**12.1     Conditions to Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived by the Company:

12.1.1 The Confirmation Order shall have been entered on the docket in the Bankruptcy Cases.

12.1.2 The effectiveness of the Confirmation Order shall not have been stayed and any motion for reconsideration or rehearing shall have been denied or overruled by a Court of competent jurisdiction.

12.1.3 All actions, documents, and agreements necessary to implement the Prepackaged Plan shall have been effected or executed.

**12.2     Waiver of Conditions**

Each of the conditions to the Effective Date, set forth above may be waived in whole or in part by the Company without any other notice to parties-in-interest or the Court. The failure to satisfy or waive any condition to the Effective Date may be asserted by the Company regardless of the circumstances giving rise to the failure of such condition to be satisfied. The failure of any party to exercise any of its foregoing rights shall not be deemed a waiver of any of its other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

# ARTICLE XIII
## ALLOWANCE AND PAYMENT OF
## CERTAIN ADMINISTRATIVE EXPENSE CLAIMS

**13.1    Final Fee Applications**

All final requests for payment of Professional Fee Claims (the "Final Fee Applications") must be Filed no later than sixty days after the Effective Date. Objections, if any, to Final Fee Applications of such Professionals must be Filed and served on Reorganized Tetragenex, the requesting Professional and the Office of the United States Trustee no later than thirty days from the date on which each such Final Fee Application is served and filed. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Court, the allowed amounts of such Professional Fee Claims shall be determined by the Court. Reorganized Tetragenex shall be responsible for payment of any Final Fee Applications approved by the Court. Reorganized Tetragenex shall be responsible for payment of any accrued, but unpaid professional fees.

**13.2    Employment of Professionals after the Effective Date**

From and after the Effective Date, any requirement that professionals comply with Bankruptcy Code sections 327 through 331 or any order previously entered by the Court in seeking retention or compensation for services rendered or expenses incurred after such date will terminate.

# ARTICLE XIV
## EFFECTS OF CONFIRMATION

**14.1    Binding Effect**

The Prepackaged Plan shall be binding upon and inure to the benefit of Reorganized Tetragenex, all present and former holders of Claims and Interests, whether or not such holders will receive or retain any property or interest in property under the Prepackaged Plan, and its respective successors and assigns, including, but not limited to, the Company and Reorganized Tetragenex, and all other parties in interest in the Bankruptcy Cases.

**14.2    Discharge**

14.2.1 Except as otherwise provided in the Prepackaged Plan, the rights granted in the Prepackaged Plan and the treatment of all Claims and Interests shall be in exchange for, and in complete satisfaction, discharge, and release of, all Claims and Interests of any nature whatsoever against the Company, Reorganized Tetragenex and any of the Estates' property, whether such Claims or Interests arose before or during the Bankruptcy Cases or in connection with implementation of the Prepackaged Plan. Except as otherwise provided in the Prepackaged Plan, on the Effective Date, the Company shall be discharged and released from any and all Claims and Interests, including demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), regardless of whether (i) a proof of claim evidencing such debt was filed or deemed filed under

Bankruptcy Code section 501; (ii) a Claim based on such debt is allowed under Bankruptcy Code section 502; or (iii) the holder of a Claim based on such debt has accepted the Prepackaged Plan. Except as otherwise provided in the Prepackaged Plan, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Company. Pursuant to Bankruptcy Code section 524, the discharge granted under this section shall void any judgment against any of the Company at any time obtained (to the extent it relates to a discharged Claim or Interest), and operates as an injunction against the prosecution of any action against any of Reorganized Tetragenex or the Estates' property (to the extent it relates to a discharged Claim or Interest).

14.2.2 Notwithstanding any provision in the Prepackaged Plan, nothing in the Prepackaged Plan discharges, releases, precludes, or enjoins (i) any environmental liability to any governmental unit that is not a Claim as such term is defined in section 101 of the Bankruptcy Code or (ii) any environmental Claim of any governmental unit arising on or after the Effective Date. The Company and Reorganized Tetragenex reserve the right to assert that any environmental liability is a Claim that arose on or prior to the Effective Date and that such Claim has been discharged and/or released under sections 524 and 1141 of the Bankruptcy Code. In addition, nothing in the Prepackaged Plan discharges, releases, precludes, or enjoins any environmental liability to any governmental unit that any entity would be subject to as the owner or operator of property after the Effective Date.

14.2.3 Notwithstanding any provision in the Prepackaged Plan, the Confirmation Order and any implementing Plan documents, including but not limited to notices of assumption and assignment of executory contracts, any rights of way, pending applications for rights of way, leases, licenses, authorizations, contracts, agreements or other interests of the federal government shall be treated, determined and administered in the ordinary course of business as if the Company's bankruptcy cases were never filed and the Company and the Reorganized Tetragenex shall comply with all applicable non-bankruptcy law, federal regulations and statutes. Moreover, without limiting the foregoing, nothing in the Prepackaged Plan, Confirmation Order or implementing Plan documents shall be interpreted to set cure amounts for the cure claim of any governmental unit of the federal government or to require any such governmental unit of the federal government to novate or otherwise consent to the transfer of any federal government contract, agreement or interest. The federal government's rights to offset or recoup any amounts due under, or relating to, any contracts, agreements or other interests are expressly preserved.

## 14.3 <u>Injunction</u>

Except as otherwise provided in the Prepackaged Plan, the Confirmation Order shall provide, among other things, that from and after the Effective Date all Persons who have held, hold or may hold Claims against or Interests in the Company are permanently enjoined from taking any of the following actions against the Estates, the Company, Reorganized Tetragenex, holders of Reorganized Tetragenex Equity or any of its respective property on account of any such Claims or Interests: (A) commencing or continuing, in any manner or in any place any action or other proceeding; (B) enforcing, attaching, collecting, or recovering in any manner any

judgment, award, decree, or order; (C) creating, perfecting or enforcing any lien, lis pendens, or other encumbrance against any of the assets of Reorganized Tetragenex; (D) asserting a setoff or right of subrogation of any kind against any debt, liability, or obligation due to the Company; and (E) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Prepackaged Plan provided, however, that nothing contained herein shall preclude such Persons from exercising its rights pursuant to and consistent with the terms of the Prepackaged Plan or the Confirmation Order.

## 14.4   Term of Bankruptcy Injunction or Stays

All injunctions or stays provided for in the Bankruptcy Cases under Bankruptcy Code section 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. Upon the Effective Date, the injunction provided in Section 14.3 above shall apply.

## 14.5   Compromises and Settlements

Pursuant to Bankruptcy Rule 9019(a), the Company may compromise and settle various Claims (a) against them and (b) that they have against other Persons. The Company expressly reserves the right (with Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Claims against them and claims that they may have against other Persons up to and including the Effective Date. After the Effective Date, such right shall pass to Reorganized Tetragenex and shall be governed by the terms of the Prepackaged Plan.

## 14.6   Satisfaction of Subordination Rights

All Claims against the Company and all rights and claims between or among Claimholders relating in any manner whatsoever to distributions on account of Claims against or Interests in the Company, based upon any subordination rights, whether asserted or unasserted, legal or equitable, shall be deemed satisfied by the distributions under the Prepackaged Plan to Claimholders or Interest Holders having such subordination rights, and such subordination rights shall be deemed waived, released, discharged, and terminated as of the Effective Date. Distributions to the various Classes of Claims hereunder shall not be subject to levy, garnishment, attachment, or like legal process by any Claimholder or Interest Holder by reason of any subordination rights or otherwise, so that each Claimholder shall have and receive the benefit of the distributions in the manner set forth in the Prepackaged Plan.

## 14.7   Exculpation and Limitation of Liability

Except as otherwise specifically provided in the Prepackaged Plan, the Company, Reorganized Tetragenex, and any of such entities' respective present or former members, officers, directors, employees, representatives, attorneys, financial or other professional advisors, or other agents and any of such parties' successors and assigns, shall not have or incur any claim, obligation, cause of action or liability to one another or to or from any Claimholder or Interest Holder, or any other party in interest, or any of its respective agents, employees, representatives, financial advisors, attorneys or Affiliates, or any of its successors or assigns, for any act or omission originating or occurring on or after the Petition Date in connection with, relating to, or arising out of the Company, the Bankruptcy Case, negotiation and filing of the Prepackaged

Plan, filing the Bankruptcy Case, the pursuit of Confirmation of the Prepackaged Plan, the consummation of the Prepackaged Plan, the administration of the Prepackaged Plan or the property to be liquidated and/or distributed under the Prepackaged Plan, except for its willful misconduct, gross negligence, or fraud as determined by a Final Order of a court of competent jurisdiction, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities under the Prepackaged Plan.

**14.8** **Indemnification Obligations**

Notwithstanding anything to the contrary herein, subject to the occurrence of the Effective Date, the obligations of the Company as provided in the Company's certificate of incorporation and bylaws as in effect through the Effective Date and under applicable law or other applicable agreements as in effect through the Effective Date to indemnify, defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of, the current and former directors, officers and employees of the Company (including in the case of officers and employees serving as directors, managers, officers and employees of any Affiliate of the Company or as trustee (or similar position) of any employee benefit plan or trust (or similar Person) of the Company, in such capacity) against any damages, liabilities, obligations, claims or causes of action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, shall survive confirmation of the Prepackaged Plan, remain unaffected thereby after the Effective Date and not be discharged under section 1141 of the Bankruptcy Code or otherwise, irrespective of whether such indemnification, defense, advancement, reimbursement, exculpation or limitation is owed in connection with an event occurring before or after the Petition Date. Any Claim based on the Company's obligations herein shall not be subject to any objection in either case by reason of section 502(e)(1)(B) of the Bankruptcy Code.

As of the Effective Date, the Restated Certificate of Incorporation and/or Restated Bylaws shall provide for the indemnification, defense, reimbursement, exculpation and/or limitation of liability of, and advancement of fees and expenses to, directors and officers and employees of Reorganized Tetragenex (including in the case of officers and employees serving as directors, managers, officers and employees of any Affiliate of Reorganized Tetragenex or as trustee (or similar position) of any employee benefit plan or trust (or similar Person) of Reorganized Tetragenex, in such capacities), who were directors, officers or employees of the Company at any time prior to the Effective Date at least to the same extent as provided in the certificate of incorporation and bylaws of the Company in effect on the Petition Date, against any damages, liabilities, obligations, claims or causes of action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, in connection with any event occurring before the Petition Date.

# ARTICLE XV
## RETENTION OF JURISDICTION

## 15.1 Matters Which the Bankruptcy Court Shall Retain Exclusive Jurisdiction

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order, substantial consummation of the Prepackaged Plan and occurrence of the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Bankruptcy Cases and the Prepackaged Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

15.1.1 Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the determination of requests for the payment of claims entitled to priority under Bankruptcy Code section 507(a)(1), including compensation of any reimbursement of expenses of parties entitled thereto;

15.1.2 Hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Prepackaged Plan or under Bankruptcy Code sections 330, 331, 503(b), 1103, and 1129(a)(4); provided, however, that from and after the Effective Date, the payment of the fees and expenses of the retained Professionals of the Company shall be made in the ordinary course of business and shall not be subject to the approval of the Court;

15.1.3 Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Company are a party or with respect to which the Company may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

15.1.4 Effectuate performance of and payments under the provisions of the Prepackaged Plan;

15.1.5 Hear and determine any and all adversary proceedings, motions, applications and contested or litigated matters arising out of, under or related to the Bankruptcy Cases, or the Prepackaged Plan;

15.1.6 Enter such orders as may be necessary or appropriate to execute, implement or consummate the provisions of the Prepackaged Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Prepackaged Plan, the Disclosure Statement, or the Confirmation Order;

15.1.7 Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Prepackaged Plan, including disputes arising under agreements, documents, or instruments executed in connection with the Prepackaged Plan;

15.1.8 Consider any modifications of the Prepackaged Plan, cure any defect or omission or reconcile any inconsistency in any order of the Court, including, without limitation, the Confirmation Order;

15.1.9 Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of the Prepackaged Plan or the Confirmation Order;

15.1.10 Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

15.1.11 Hear and determine any matters arising in connection with or relating to the Prepackaged Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Prepackaged Plan, the Disclosure Statement, or the Confirmation Order;

15.1.12 Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Bankruptcy Cases;

15.1.13 Except as otherwise limited herein, recover all assets of the Company and property of the Estates, wherever located;

15.1.14 Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

15.1.15 Hear and determine all disputes involving the existence, nature or scope of the injunctions, indemnification, exculpation, and releases granted pursuant to the Prepackaged Plan;

15.1.16 Hear and determine all matters related to (i) the property of the Estates from and after the Confirmation Date, and (ii) the activities of the Company, including (A) challenges to or approvals of the Company's activities, and (B) reporting by and accounting by the Company;

15.1.17 Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

15.1.18 Enter a final decree closing the Bankruptcy Cases.

# ARTICLE XVI
## CONFIRMATION

**16.1**     **Standard for Confirmation**

To confirm the Prepackaged Plan, the Bankruptcy Code requires that the Bankruptcy Court make a series of findings concerning the Prepackaged Plan and the Company, including that:

- the Prepackaged Plan has classified Claims and Interests in a permissible manner;

- the Prepackaged Plan complies with the applicable provisions of the Bankruptcy Code;

- the Company has complied with the applicable provisions of the Bankruptcy Code;

- the Company, as proponents of the Prepackaged Plan, has proposed the Prepackaged Plan in good faith and not by any means forbidden by law;

- the disclosure required by section 1125 of the Bankruptcy Code has been made;

- the Prepackaged Plan has been accepted by the requisite votes, except to the extent that cramdown is available under section 1129(b) of the Bankruptcy Code, of creditors and equity interest holders;

- the Prepackaged Plan is feasible;

- all fees and expenses payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, have been paid or the Prepackaged Plan provides for the payment of such fees on the Effective Date;

- the Prepackaged Plan provides for the continuation after the Effective Date of all retiree benefits, as defined in section 1114 of the Bankruptcy Code, at the level established at any time prior to Confirmation pursuant to section 1114(e)(1)(B) or 1114(g) of the Bankruptcy Code, for the duration of the period that the applicable Company has obligated itself to provide such benefits;

- the disclosures required under section 1129(a)(5) of the Bankruptcy Code concerning the identity and affiliations of persons who will serve as officers, directors, and voting trustees of the successors to the Company has been made; and

- the Prepackaged Plan is in the "best interests" of all holders of Claims or Interests in an impaired Class by providing to creditors or interest holders on account of such Claims or Interests property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain in a chapter 7 liquidation, unless each holder of a Claim or Interest in such Class has accepted the Prepackaged Plan.

## 16.2    Acceptance

A plan is accepted by an impaired class of claims if holders of at least two thirds in dollar amount and a majority in number of claims of that class vote to accept the Prepackaged Plan. Only those holders of claims who actually vote (and are entitled to vote) to accept or to reject a plan count in this tabulation.

## 16.3    Feasibility

Section 1129(a)(11) of the Bankruptcy Code provides that a chapter 11 plan may be confirmed only if the Bankruptcy Court finds that such plan is feasible.  A feasible plan is one which will not lead to a need for further reorganization or liquidation of the debtor, unless such reorganization or liquidation is contemplated by the plan.  Since the Prepackaged Plan provides for the re-vesting of the assets in the Reorganized Tetragenex and the transfer of the Assets to the Purchaser, the Bankruptcy Court will find that the Prepackaged Plan is feasible if it determines that the Company will be able to satisfy the conditions precedent to the Effective Date and otherwise have sufficient funds to meet its post-Confirmation Date obligations to pay for the costs of administering and fully consummating the Prepackaged Plan and closing the Bankruptcy Cases.  The Company believes that the Prepackaged Plan satisfies the financial feasibility requirement imposed by the Bankruptcy Code.

## 16.4    Best Interests Test; Liquidation Analysis

Notwithstanding acceptance of a plan by each impaired class (or satisfaction of the "cramdown" provisions of the Bankruptcy Code in lieu thereof), for a plan to be confirmed, the Bankruptcy Court must determine that the Prepackaged Plan is in the best interest of each holder of a claim who is in an impaired class and has not voted to accept the Prepackaged Plan. Accordingly, if an impaired class does not unanimously accept a plan, the best interests test requires the Bankruptcy Court to find that the Prepackaged Plan provides to each member of such impaired class a recovery on account of such class member's claim that has a value, as of the date such plan is consummated, at least equal to the value of the distribution that such class member would receive if the debtor proposing the plan were liquidated under chapter 7 of the Bankruptcy Code on such date.

To estimate what holders of Claims or Interests in each impaired Class would receive if the Company were liquidated under chapter 7 of the Bankruptcy Code, the Bankruptcy Court must first determine the aggregate dollar amount that would be available if the Bankruptcy Cases were converted to chapter 7 cases under the Bankruptcy Code and the Company's assets were liquidated by a chapter 7 trustee (the "Liquidation Value").  The Liquidation Value of the

Company would consist of the net proceeds from such disposition of the Company's assets, plus any Cash held by the Company.

The aggregate dollar amount that would be estimated to be available if the case were converted to Chapter 7 liquidation and available to the creditors would be as follows: Cash available would be approximately $70,000, machinery and equipment $500, and patents $10,000. (A copy of the valuation of the US Patent is included in the Prepackaged Plan) Total assets available to creditors would be approximately $80,500. The estimated trustee fees would be $10,000. One employee would be due an employee deferred payback of $10,000 which would leave $60,500 available to secured and unsecured creditor. The company has one secured claim in the amount of $85,000. The $60,500 which represents approximately 71% of the claim would go to the secured holder. That would leave zero to go to all class 3 unsecured creditors and class 4 common stock holders.

Based on this analysis, the Company believes that if the Bankruptcy Case was converted to a chapter 7 case, the assets of the Company would likely sell for less than the cost of administering such chapter 7 case, which would include the compensation of a chapter 7 trustee, as well as of counsel and of other professionals retained by the trustee, asset disposition expenses, applicable Taxes, litigation costs, Claims arising during the pendency of the chapter 7 cases and all unpaid Administrative Expense Claims incurred by the Company during the Bankruptcy Cases that are allowed in the chapter 7 cases. The result would be that there would be no recovery for any other Claimholder. Accordingly, the projected recoveries for each Class of Claims and Interests under the Prepackaged Plan are superior to the recoveries that could be realized in a chapter 7 case. Because liquidation of the Company would not yield more for the holders of Claims or Interests, the Prepackaged Plan meets the requirements of Section 1129(a)(7) of the Bankruptcy Code as to any holder of a Claim or Interest in an impaired Class that has not accepted the Prepackaged Plan.

The Company believes that this liquidation analysis reflects all relevant information known as of the date of this Disclosure Statement. The Company is not aware of any events subsequent to such date that would materially affect this liquidation analysis. This liquidation analysis is provided solely to disclose to holders the effects of a hypothetical chapter 7 liquidation of the Company, subject to the assumptions set forth herein.

**16.5    Compliance with Applicable Provisions of the Bankruptcy Code**

Section 1129(a)(1) of the Bankruptcy Code requires that the Prepackaged Plan comply with the applicable provisions of the Bankruptcy Code. The Company has considered each of these issues in the development of the Prepackaged Plan and believes that the Prepackaged Plan complies with all provisions of the Bankruptcy Code.

**ARTICLE XVII**
**CERTAIN RISK FACTORS TO BE CONSIDERED**

HOLDERS OF CLAIMS AGAINST THE COMPANY SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT (AND THE

DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED HEREIN BY REFERENCE), PRIOR TO VOTING TO ACCEPT OR REJECT THE PREPACKAGED PLAN.

THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PREPACKAGED PLAN AND ITS IMPLEMENTATION.

## 17.1    Objection to Classifications

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class. The Company believes that the classification of Claims and Interests under the Prepackaged Plan complies with the requirements set forth in the Bankruptcy Code. However, there can be no guaranty that the Bankruptcy Court would reach the same conclusion.

## 17.2    Risk of Non-Confirmation of the Prepackaged Plan

Even if the voting classes accept the Prepackaged Plan, the Prepackaged Plan might not be confirmed by the Bankruptcy Court.  Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things, that the confirmation of a plan must be proposed in good faith and is not likely to be followed by the liquidation or the need for further financial reorganization unless such liquidation is proposed in the Prepackaged Plan, and that the value of distributions to dissenting creditors and equity security holders not be less than the value of distributions such creditors and equity security holders would receive if the Company were liquidated under chapter 7 of the Bankruptcy Code.  The Company believes that the Prepackaged Plan satisfies all the requirements for confirmation of a plan under the Bankruptcy Code.

There can be no guaranty, however, that the Bankruptcy Court would also conclude that the requirements for confirmation of the Prepackaged Plan have been satisfied.

## ARTICLE XVIII
## CERTAIN FEDERAL INCOME TAX CONSEQUENCES

## 18.1    Tax Consequences Uncertain

THE TAX CONSEQUENCES UNDER THE PREPACKAGED PLAN TO HOLDERS OF CLAIMS OR INTERESTS MAY VARY BASED UPON THE PARTICULAR CIRCUMSTANCES OF EACH HOLDER.  MOREOVER, THE TAX CONSEQUENCES OF CERTAIN ASPECTS OF THE PREPACKAGED PLAN ARE UNCERTAIN DUE TO THE LACK OF APPLICABLE LEGAL PRECEDENT AND THE POSSIBILITY OF CHANGES IN THE LAW. NO RULING HAS BEEN APPLIED FOR OR OBTAINED FROM THE INTERNAL REVENUE SERVICE WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PREPACKAGED PLAN AND NO OPINION OF COUNSEL HAS BEEN REQUESTED OR OBTAINED BY THE COMPANY WITH RESPECT THERETO.

THIS DISCUSSION DOES NOT CONSTITUTE TAX ADVICE OR A TAX OPINION CONCERNING THE MATTERS DESCRIBED. THERE CAN BE NO ASSURANCE THAT THE INTERNAL REVENUE SERVICE WILL NOT CHALLENGE ANY OR ALL OF THE TAX CONSEQUENCES DESCRIBED HEREIN, OR THAT SUCH A CHALLENGE, IF ASSERTED, WOULD NOT BE UPHELD.  ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, FOREIGN, OR OTHER TAX CONSEQUENCES OF THE PREPACKAGED PLAN.

INTERNAL REVENUE SERVICE CIRCULAR 230 DISCLOSURE: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE U.S. INTERNAL REVENUE SERVICE, ANY STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING TAX-RELATED PENALTIES UNDER THE CODE.  STATEMENTS REGARDING TAX IMPLICATIONS CONTAINED IN THIS DISCLOSURE STATEMENT (INCLUDING ANY ATTACHMENTS) ARE NOT WRITTEN TO SUPPORT THE MARKETING OR PROMOTION OF THE TRANSACTIONS OR MATTERS ADDRESSED BY THE DISCLOSURE STATEMENT.  EACH TAXPAYER SHOULD SEEK ADVICE BASED ON THE TAXPAYER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

## 18.2    Allocation of Consideration to Interest

A portion of the consideration received by a holder in satisfaction of an Allowed Claim pursuant to the Prepackaged Plan may be allocated to the portion of such Allowed Claim (if any) that represents accrued but unpaid interest. Unless otherwise proscribed under applicable statute or rule, Distributions under the Prepackaged Plan are allocated first to the principal of a Claim, then to any accrued interest. If any portion of the Distribution were required to be allocated to accrued interest, such portion would be taxable to the Holder as interest income, except to the extent the Holder has previously reported such interest as income.

In that event, only the balance of the Distribution would be considered received by the Holder in respect of the principal amount of the Allowed Claim. Such an allocation would reduce the amount of the gain, or increase the amount of loss, realized by the Holder with respect to the Allowed Claim. If any such loss were a capital loss, it would not offset any amount of the distribution that was treated as ordinary interest income (except, in the case of individuals, to the limited extent that capital losses may be deducted against ordinary income).

To the extent that any portion of the Distribution is treated as interest, Holders may be required to provide certain tax information in order to avoid the withholding of taxes.

## 18.3    Recommendation to Consult Tax Advisor

TAX CONSEQUENCES MAY VARY BASED ON THE PARTICULAR CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST. ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT

WITH HIS, HER, OR ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, AND LOCAL INCOME AND OTHER TAX CONSEQUENCES UNDER THE PREPACKAGED PLAN.

## ARTICLE XIX
## ALTERNATIVES TO CONFIRMATION
## AND CONSUMMATION OF THE PREPACKAGED PLAN

The Company has evaluated alternatives to the Prepackaged Plan, including alternative structures and terms of liquidation for the Company. While the Company has concluded that the Prepackaged Plan is the best alternative and will maximize recoveries by holders of Claims, if the Prepackaged Plan is not confirmed, the Company or (subject to the Company's exclusive periods under the Bankruptcy Code to File and solicit acceptances of a plan or plans of liquidation) any other party in interest in the Bankruptcy Cases could attempt to formulate and propose a different plan or plans of reorganization. Further, if no plan of reorganization under chapter 11 of the Bankruptcy Code can be confirmed, the Bankruptcy Case may be converted to a chapter 7 case. In that event, the costs of administering the chapter 7 case would likely exceed the value Company's assets and there would be no recovery for any of the Company's current Claim or Interest Holders. For further discussion of the potential impact on the Company of the conversion of the Bankruptcy Case to a chapter 7 liquidation, see Section 16.4 above. The Company believes that Confirmation and consummation of the Prepackaged Plan is preferable to the available alternatives.

## ARTICLE XX
## CONCLUSIONS AND RECOMMENDATION

The Company believes that confirmation and implementation of the Prepackaged Plan is preferable to the alternative described above because the Prepackaged Plan will provide each creditor with a greater recovery than it would receive if the Company were to liquidate and distribute its assets under chapter 7, in which case there would likely be a delay in making distributions to creditors, and creditors would likely receive smaller, or in many instances, no distributions. Thus, the Company recommends confirmation and implementation of the Prepackaged Plan as the best possible outcome for creditors.

[Remainder of page intentionally left blank. Signature page follows.]

Dated: Syosset, New York
August 10, 2010

**Tetragenex Pharmaceuticals, Inc.**

By: <u>/s/</u>
Martin Schacker
Chairman, Co-CEO and President

**Exhibit A**

**Prepackaged Plan of Reorganization**